FILED

2026 Jun-03  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

EXHIBIT 3



Admitted:
New York
New Jersey
Pennsylvania
U.S. Virgin Islands
Dist. Ct. Puerto Rico

**Daniel Cevallos, Esquire**
60 Broad Street, Suite 2900
New York, NY 10004
P: 917.699.5008
www.CevallosWong.com
Danny@CevallosWong.com

November 29, 2025

*Via E-Mail*
Tabber B. Benedict, Esq.
Benedict Advisors
21 West End Ave., Apt. 3008
New York, NY 10023
917.570.9352
Tabber@BenedictAdvisorsPLLC.com

Re: Cease & Desist, Misuse of Takedown Notices, Section 512(f); Client Admissions

Dear Mr. Benedict:

As you know, I represent Shuli Egar, and *The Shuli Network* (hereinafter "Egar/TSN"). While this notice is partially related to our pending litigation in New York County Supreme Court, it is also related to a new and urgent issue. I am respectfully requesting that you forward this notice to Mr. Melendez. Please advise him that he has exposed himself and others to liability for submitting unlawful takedown notices under the Digital Millennium Copyright Act ("DMCA") under (*inter alia*) 17 U.S.C. § 512(f). He has misused the DMCA takedown notice process despite his admitted, actual knowledge that Egar/TSN's use is transformative, protected fair use. While I expect Mr. Melendez will have different counsel as a defendant in a § 512(f) lawsuit in another forum, he is currently represented by you in the New York case, so we are directing this correspondence to you. We can continue to send correspondence to you in the DMCA matter, or directly to him—but *only* if you are not representing him in defense of that matter, and you instruct us to do so (to avoid any appearance of direct communication with a represented party).

### 1. SUMMARY: MELENDEZ'S KNOWING MISUSE OF DMCA TAKEDOWN NOTICES

Mr. Melendez (and others at his direction) have submitted numerous false DMCA takedown notices to an OSP (YouTube) to suppress Egar/TSN's lawful commentary about Melendez. Mr. Melendez has knowingly and materially misrepresented that Egar/TSN's material is infringing. 17 U.S.C. § 512(f). Mr. Melendez knew well in advance of the takedown submissions that Egar/TSN's use was fair use, transformative, criticism, commentary, parody, and therefore not infringing. He admitted this on several occasions on his broadcasts (*see infra*). He therefore misrepresented his good faith belief that the use was not authorized by the law, under penalty of perjury. 17 U.S.C. § 512(c)(3)(A)(i)–(vi). Accordingly, Melendez will be liable for damages under 17 U.S.C. § 512(f).

Melendez is knowingly abusing the 10-14 day automatic takedown procedure in order to silence Egar/TSN. Melendez knows that after receiving the takedown notice, the OSP must either take the material down for at least 10-14 days – regardless of whether the material actually infringes on any copyright – or the OSP will lose immunity against secondary copyright liability. Melendez is therefore submitting false takedown notices knowing they are in bad faith, because his true objective is to silence Egar/TSN for the mandatory 10-14 days. Melendez then takes no

further legal action as contemplated by § 512(g)(2)(C); he just submits new takedown notices to reset the 10-14 days, knowing that the OSP *must* take down Egar/TSN's material—even if the OSP (and Melendez) knows the material is obviously fair use and not infringing. Melendez knows that these 10-14 day interruptions cause irreparable harm to Egar/TSN by alienating their audience and cutting off revenue.

### A. Melendez will be Liable for Others' False Takedown Notices

Melendez will not be able to avoid liability by trying to blame the takedown notices on his co-hosts, guests, co-conspirators, or someone else who submitted takedown notices on his behalf, or at his direction. While you may not represent these other individuals, please advise Mr. Melendez that he will be held liable for the conduct of others he conspired with or directed to abuse the DMCA process (along with those individuals' own liability).

### B. Takedown Notices Submitted Under Penalty of Perjury

Melendez and others at his direction signed their YouTube takedown notices "under penalty of perjury," pursuant to DMCA, 17 U.S.C. § 512(c)(3)(A)(v)–(vi). Accordingly, knowingly false statements subject the signer to the penalties of perjury. See below image (image hyperlinked).

**4. Legal agreements**

☐ I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

☐ The information in this notification is accurate, and under penalty of perjury, I am the owner, or an agent authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed.

☐ I understand that abuse of this tool, such as submitting removal requests for content I do not own, may result in termination of my YouTube account.

Signature (required)

ⓘ Make sure your signature contains your full legal name, which is usually your first and last name as stated on a government-issued ID. YouTube won't be able to process your request without this info.

## 2. SHULI & TSN'S PROPER COUNTER NOTIFICATIONS

Egar/TSN have properly submitted their counter notifications under the DMCA, for which the creator need only have a subjective good faith belief that a use is authorized. 17 U.S.C.A. § 512(g)(3)(C). As Mr. Melendez knows, however, counter notifications cannot stop the 10-14 day automatic takedown period, which Mr. Melendez is exploiting for improper purposes.

## 3. MELENDEZ'S KNOWING MISUSE OF TAKEDOWN NOTICES IS UNLAWFUL

Your client's knowing misrepresentations and his deliberate misuse of takedown notices are unlawful. Section 512(f) of the DMCA provides that:

> [a]ny person who knowingly materially misrepresents under this section—(1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for damages, including costs and



attorneys' fees, incurred by the alleged infringer, [or] by any copyright owner. 17 U.S.C. § 512(f).

Moreover, "if a copyright holder ignores or neglects [the requirement that he] must consider fair use before sending a takedown notification, [he] is liable for damages under [Section] 512(f)." *Lenz v Universal Music*, 815 F.3d 1145 [9th Cir. 2016]. As you can see below, there is *zero dispute* that Melendez knows that "fair use is an affirmative defense to copyright infringement." *Hosseinzadeh v Klein*, 276 F.Supp.3d 34, 43 [SDNY 2017]. There is also zero dispute that Melendez knew at the time of his takedown notices that Egar/TSN's use was fair use (see below).

### A. First Factor: Melendez Knew the Use was Transformative

"The heart of the fair use inquiry" is whether the use is "transformative" by "add[ing] something new, with a further purpose or different character[.]" *On Davis v Gap*, 246 F.3d 152, 173 [2d Cir. 2001]. Mr. Melendez has long known that because Egar/TSN's use "does something more than repackage or republish the original…work, it is transformative." *Authors Guild v HathiTrust*, 755 F.3d 87, 96 [2d Cir. 2014].

#### (i) MELENDEZ KNEW COMMENT, CRITICISM IS TRANSFORMATIVE

Mr. Melendez admits that Egar/TSN's use of Mr. Melendez's claimed work is to comment on or criticize it. "It is well-established that '[a]mong the best recognized justifications for copying from another's work is to provide comment on it or criticism of it.'" *Hosseinzadeh*, 276 F.Supp.3d 34, 43 (*quoting Authors Guild v Google*, 804 F.3d 202, 214–15 [2d Cir. 2015]). "[T]here is a strong presumption [in favor of the] the defendant if the allegedly infringing work" includes "criticism" and "comment." *Wright v Warner Books*, 953 F.2d 731, 736 [2d Cir. 1991]. "Accordingly, courts have regularly found fair use after holding that the purpose or character of an allegedly infringing work was criticism and/or comment." *Hosseinzadeh*, 276 F.Supp.3d at 42 (*citing NXIVM Corp. v Ross*, 364 F.3d 471, 482 [2d Cir. 2004]) (defendants' allegedly infringing writings were "undoubtedly transformative secondary uses intended as a form of criticism").

#### (ii) MELENDEZ KNOWS PARODY IS TRANSFORMATIVE

Similarly, "[p]arody, like other forms of comment or criticism, has an obvious claim to transformative value." *Louis Vuitton Malletier v My Other Bag*, 156 F.Supp.3d 425, 444–45 [SDNY], *aff'd*, 674 Fed.Appx. 16 [2d Cir. 2016]; *Adjmi v DLT Entm't*, 97 F.Supp.3d 512, 531 [SDNY 2015] (holding a play made fair use of the television series *Three's Company* in part because the play "criticizes and comments upon *Three's Company* by reimagining a familiar setting in a darker, exceedingly vulgar manner.").

### B. "Market Substitute" Factor Establishes Fair Use

The "market substitute" factor conclusively establishes Egar/TSN's fair use. This factor "focus[es] on whether the secondary use usurps demand for the protected work by serving as a market substitute[.]" *McCollum*, 839 F.3d at 186. Egar/TSN's use does not cause the required "substantially adverse impact on the potential market for the original.' " *McCollum*, 839 F.3d at 186 (*quoting Campbell*, 510 U.S. at 590, 114 S.Ct. 1164).



Of course, Mr. Melendez knows that Egar and TSN's commentary, criticism and parody of his show is not a "market substitute." People do not watch Egar/TSN's work *instead* of Mr. Melendez's work. Nor is there any confusion between what is Mr. Melendez's work, and what is Egar/TSN's work. Indeed, Mr. Melendez has acknowledged on numerous occasions that Egar/TSN's shows criticizing him and his show have had a *positive* impact on the market for his show, by generating interest in Mr. Melendez and driving traffic to his shows.

"The question is whether the allegedly infringing work serves as a 'market substitute' for the allegedly infringed work, not merely whether the market for the allegedly infringed work was harmed." *Hosseinzadeh*, 276 F.Supp.3d at 43. Melendez knows Egar/TSN's content obviously does not seek to harm the market or kill demand for Melendez's broadcasts. Their commentary actually calls attention to Melendez's work, *increasing* demand. However, even if Egar/TSN *did* seek to kill demand for Melendez's content (and they do not), "critical parodies may legitimately aim at harming the market for a copyrighted work, and…'a lethal parody, like a scathing theater review, kills demand for the original [but] does not produce a harm cognizable under the Copyright Act.'" *Hosseinzadeh*, 276 F.Supp.3d at 43. "[I]f the secondary work harms the market for the original through criticism or parody, rather than by offering a market substitute for the original that supersedes it, *it does not produce a harm cognizable under the Copyright Act*." *On Davis*, 246 F.3d at 175 [emphasis added]. *See also Nunez v Caribbean Int'l News*, 235 F.3d 18, 24 [1st Cir. 2000] ("[T]o the extent that the copying damages a work's marketability by parodying it or criticizing it, the fair use finding is unaffected."). Even if the "biting criticism…suppresses demand," it is not copyright infringement. *Campbell*, 510 U.S. at 592, 114 S.Ct. 1164.

Mr. Melendez knew at the time of his takedown notices that Egar/TSN's use was fair use. He knew it was transformative, criticism, commentary, and parody. He knew that the use was not a "market substitute." He knew the complained-of use *increased* demand for his show, not decreased it.

### C. Defendants' Motions in NY Case

Mr. Melendez also had ample, actual notice that Egar/TSN's use was lawful from the defendants' filings in the New York case, which demonstrate that Egar/TSN's use is and was lawful. Plaintiff's opposition to these motions did not even refute much of this caselaw, leaving it unopposed and unchallenged. He is now just using these false DMCA takedown notices as an end run around his lawsuit.

## 4. PROOF OF MELENDEZ'S BAD FAITH: HIS OWN ADMISSIONS THAT THIS IS FAIR USE

There will be no material issue of fact in a Section 512(f) cause of action because Melendez himself has conclusively admitted on his own broadcasts that he has long known Egar/TSN's use is fair use. This evidence conclusively establishes his knowing misrepresentations in his takedown notices. 17 U.S.C. § 512(f). Some of his *numerous* admissions, dated before his DMCA takedown notices, are contained in this video montage of clips from his shows: https://drive.google.com/file/d/1IK6jA4dcuilfLO5deVqDQOv_WAlSbVP9/view.


*A. 6/29/2024: Melendez Admits Knowledge that Fair Use Permits Creators to Play Clips and Comment*

On 6/29/2024, Melendez admitted in response to a comment from an audience member that he "was wrong" and "didn't understand fair use," admitting that he learned long before his takedown notices that other creators playing clips of Melendez's show for commentary was and is fair use. https://drive.google.com/file/d/1IK6jA4dcuilfLO5deVqDQOv_WAlSbVP9/view.

> [*Melendez reads a comment from audience member "Peni5Wrinkle12" chatting with him in real time*]
>
> "P*nis Wrinkle [says] you [meaning Mr. Melendez] have history of misunderstanding all like fair use."
>
> [*Melendez then responds to Peni5Wrinkle12's comment*]
>
> Fair use, yes. **I got that wrong**. Royce[1] had to school me on it. And the only reason, P*nis Wrinkle is because—I can't believe I'm talking to a guy named P*nis Wrinkle—the only reason is because P*nis Wrinkle is that when we were on The Tonight Show, if we used a bit, let's say an MLB bit or NFL bit, **we could** only **use a certain amount of time** and we'd have to pay.
> So when we used a clip from airplane, we had to pay. And it was my drop in. I used a clip from *Airplane!*.[2] And the studio charged us like 10 grand for it. **That's why I didn't understand fair use. So it becomes, I was wrong**, but rightfully so, because we had used it correctly.
> Lady Kay[3] started taking shots at the Duke.[4] Now, I didn't know who he was. **And I didn't know fair use**. Now you might say, John, **how dumb could you think that you don't know what fair use means? And I'll say fair enough. I didn't know that the term, I wasn't aware of the term fair use.**
> And why should I be? **And Royce, my producer at the time, was very, very astute when it came to fair use**. And he had done a whole thesis on it in college. And he said, no, ==**John, you are wrong. They're allowed to play the clips. And then he schooled me on it. And I was wrong**==. The Duke doesn't lie. I was doing a show at Royce and Lady Kay started it. And I was too stupid to realize I shouldn't respond. **I just didn't realize I**

---

[1] Mr. Melendez's former producer.

[2] Presumably Mr. Melendez is referring to *Airplane!*, a 1980 American disaster comedy film starring Robert Hays and Julie Hagerty.

[3] "Lady K" is Mr. Melendez's derogatory name for Karl Heberger, meant to insult him by implying that Mr. Heberger is feminine.

[4] Mr. Melendez refers to himself as the "Duke" which may be a John Wayne reference.

**didn't understand fair use.** And Royce, who wrote an essay on it in college, had to school me on fair use...

*B. 9/16/2025: Melendez Admits Knowledge that Fair Use Permits "Playing Clips" of his "Podcast and Goofing on Me"*

Just over two months ago on 9/16/2025, Melendez admitted on his show that he knew that fair use permitted other creators to "play clips and excerpts" of "my podcast and goof on me." https://drive.google.com/file/d/1IK6jA4dcuilfLO5deVqDQOv_WAlSbVP9/view.

But right around this time, Just Do It,[5] a person I had never heard of, started to **play my podcast and goof on me** for no apparent reason. I had never heard of the guy, most like most Americans. And I didn't understand it. **And Royce and I would have fair use discussions. And Royce said, John, you're wrong**. **He's allowed to play clips and excerpts**. And I said, how? It's our property. Now, granted, I'm not a lawyer yet. And I'll never attest to being. **But I did not know. And Royce had corrected me**.

## 5. FURTHER PROOF OF BAD FAITH: NO COURT ORDER SOUGHT

As further proof that Melendez is misusing DMCA takedown notices, Melendez knows that under § 512(g)(2)(C), the provider (YouTube) must replace the content unless the provider receives notice from the copyright claimant that they have filed an action seeking a court order to restrain the user's alleged infringement. Of course, Melendez has never filed any court action. Melendez is just using the automatic 10-14 day removal over and over again to cause irreparable harm to Egar/TSN.

## 6. CEASE & DESIST NOTICE

Please explain to your client that there is no dispute, and no material issue of fact: Mr. Melendez submitted a DMCA takedown notice knowingly and materially misrepresenting that the material or activity was infringing. He did so with actual knowledge that the material was not infringing, and that the material was protected by fair use. He has admitted it on numerous occasions, including the examples we provide herein. Accordingly, he will be liable for damages, including costs and attorneys' fees, incurred by Egar/TSN. 17 U.S.C. § 512(f). Please advise Mr. Melendez to immediately withdraw all takedown notices in writing, and to provide assurances that he will no longer abuse the DMCA takedown notice process. This is **not** an offer to resolve or settle this takedown notice claim. It is a notice to cease and desist to avoid further, ongoing damages to Egar/TSN, for which Mr. Melendez will be liable on a rolling basis.

---

[5] Mr. Melendez refers to Karl Heberger, of *Who Are These Podcasts*, as "Just Do It."

C&W CEVALLOS & WONG LLP

## 7. THE NEW YORK CASE

### A. Plaintiff's Admissions that Defendants' Use is Fair Use

Separately, we also write in connection with the New York Supreme Court case *Melendez v Egar, TSN, et al.*, 160416/2025 (NY County). The above admissions by Melendez further establish that Melendez knew in 2024, and knows now, that the defendants' (Egar, TSN, Karl Heberger, and *Who Are These Podcasts*) use of clips of plaintiff's broadcast was and is fair use, transformative, criticism, commentary, and parody. These broadcast admissions above are further conclusive proof that plaintiff's lawsuit is frivolous, and he knew it was frivolous when he filed it.

### B. Plaintiff's Admissions that Kate Meaney is "Innocent" Defeat Motion to Amend Complaint

Your client recently admitted in public broadcasts that Kate Meaney is an "innocent woman" in recording your client's phone calls (of course, he has separately admitted that he was aware of, intended, and consented to the recordings). The below links are from just two recent broadcasts in which your client admits Kate Meaney's innocence. His own admissions establish that his pending Cross-Motion to Amend the Second Amended Complaint ("SAC") [NYSCEF ## 28-35][6] to add Kate Meaney as a defendant is demonstrably frivolous: she cannot possibly be liable if he believes she is "innocent."

(i) 11/08/2025

https://drive.google.com/file/d/1p4e2q_E9NJLtdIP4acaTzT_jqcBFzMss/view

(ii) 11/17/2025

https://drive.google.com/file/d/16QiAEkzQgKAn_goGmzmsZWVZ35rHLEoK/view?usp=sharing.

### C. Notice

We are placing you and your client on notice of these public admissions as a courtesy, pursuant to 17 U.S.C. § 512(f); CPLR 8303-a; 22 NYCRR § 130-1.1; 22 NYCRR Part 1200, Rules 3.1, 3.3, 4.1, *et al.*, NY Civil Rights Law §§ 70-a and 76-a, and asking you to advise your client to voluntarily withdraw his motion to amend the SAC, since he believes the proposed new defendant (Ms. Meaney) is "innocent." We are separately asking your client to withdraw his entire SAC, as it is demonstrably frivolous.

## 8. LETTER NOT SUBMITTED PURSUANT TO RULE 408

This letter is not submitted pursuant to Rule 408 for settlement purposes, because we intend to submit this letter as evidence of notice to your client of his violations of DMCA, and the frivolousness of his motion to amend, and the SAC itself. We thank you for your attention to this

---

[6] https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=6jsalkUNcPTrsw8Rk9vUuw==.

DMCA matter (especially if you won't be handling it) and appreciate your efforts to communicate this notice to Mr. Melendez.

I respect and understand that these are difficult conversations you must have with your client, but he should have full knowledge of the potential consequences should he decide to continue with his unlawful DMCA takedown notices, and this New York lawsuit.

I thank you for your attention to these matters.

By:_____

Daniel L. Cevallos, Esq.