FILED
2026 Jun-12 AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SHULI EGAR; PHILLIP J. RUSSO, and TSN CORP.,** <br> **Plaintiffs,** <br> **-vs-** <br> **JOHN MELENDEZ,** <br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **COMPLAINT** <br><br> **Civ. No.: 5:26-cv-00949-HNJ** |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiffs Shuli Egar ("Egar"), Phillip J. Russo[1] ("Russo"), and TSN Corp. ("TSN") (collectively, "Plaintiffs"), by and through the undersigned attorneys, for their First Amended Complaint against the Defendant, John Melendez[2] ("Melendez" or "Defendant"), hereby state:

<u>Introduction</u>

1. Egar, Russo, and TSN appear in, produce, and broadcast shows on YouTube.com ("YouTube"), on a channel called *The Shuli Network*. One of the shows broadcast on *The Shuli Network* is *The Uncle Rico Show,* which provides commentary, reporting, and criticism of current events and public figures.

[1] Russo is a/k/a Joe or Joseph Russo.

[2] Defendant is known professionally as "Stuttering John."

2. Defendant Melendez considers himself a celebrity "admired by tens of millions of fans."[3]

3. Defendant also has a YouTube show of his own, where he frequently broadcasts his own criticism of other YouTube performers, including the Plaintiffs.

4. Plaintiffs' show at times criticizes, comments, parodies, and reports on news about the Defendant and his shows. Plaintiffs occasionally play short clips of Melendez's show, interspersing it with commentary, comedy, satire, parody, and reporting.

5. Even though Melendez believes he is a celebrity comic,[4] he resents that Plaintiffs and others criticize him on their shows.

6. Despite Melendez's subjective, actual admitted knowledge that the Plaintiffs' use of his content is fair use and allowable, he believes he has stumbled upon a loophole that will allow him to effectively shut down his critics.

7. Melendez has begun abusing the Digital Millennium Copyright Act ("DMCA") by repeatedly submitting fraudulent and false "Takedown Notices" to YouTube in bad faith (the number of Takedown Notices filed by Defendant is approaching 30 at this point). Melendez knows, or should know, that the Takedown

---

[3] *See, e.g.,* Defendant's prior pleadings in *Melendez vs. Sirius/XM Radio*. Exhibit 1, "Opinion and Order", ECF # 29, at pg. 2; Exhibit 2, "First Amended Complaint," ECF # 20, at pg. 1.

[4] *See* Exhibit 1 at pg. 2, citing Defendant's own pleadings.

Notices contain known fraudulent and bad faith misrepresentations that Plaintiffs' content infringes upon Defendant's copyright rights. His actions violate the DMCA as detailed herein. Defendant's bad faith is established at least by the following facts:

a. he has admitted numerous times on his broadcasts that he knows the Plaintiffs' use of his content is fair use;

b. he has repeatedly failed to follow up **any** of these Takedown Notices with a lawsuit claiming copyright infringement against the Plaintiffs; and

c. that YouTube has restored **all** of Plaintiffs' content, giving Defendant actual notice that the use is noninfringing.

Each of the foregoing facts independently satisfies the "bad faith" standard of 15 U.S.C. § 512(f).

8. Unfortunately for the Plaintiffs, each one of the Takedown Notices results in an **automatic,** unappealable, 10-14 day **removal** of Plaintiffs' content from YouTube. These false Takedown Notices have caused, and continue to cause, the systematic automatic and unjustified removal of Plaintiffs' content from YouTube, causing Plaintiffs financial, reputational, and other harm.

9. Plaintiffs have requested that Defendant cease-and-desist from submitting the fraudulent and false Takedown Notices. He refused to do so. (*See* Exhibit 3).

10. Accordingly, Plaintiffs have no choice but to seek a declaratory judgment

that their YouTube content, broadcasts, shows, publications, recordings, and performances do not infringe any copyright interest owned by Defendant. Plaintiffs also seek damages and attorneys' fees under § 512(f). Finally, Plaintiffs also seek damages under state law for Defendant's defamatory *per se* statements about the Plaintiffs.

Parties

11. Plaintiff Egar is an adult individual, and at all times relevant hereto, is and was a citizen of the State of Alabama, residing in Huntsville, in this judicial district.

12. Plaintiff TSN Corp. is an Alabama corporation, domiciled in Alabama, with studios and its principal place of business in Huntsville, in this judicial district.

13. Plaintiff Russo is an adult individual, and at all times relevant hereto, is and was a citizen of the State of Florida.

14. Defendant John Melendez is an adult individual, and at all times relevant hereto, is and was a citizen of the State of Florida, with an address of 1716 NW 11th Ct, Cape Coral, Florida 33993.

Subject Matter Jurisdiction

15. The Court has subject matter jurisdiction to hear this action as it arises under either 17 U.S.C. § 1001 ("Copyright Act"), § 512, and 28 U.S.C. §§ 1331, 1332(a), 1338, 1367, 2201, and/or 2202.

Personal Jurisdiction Over Defendant

16. This Court has personal jurisdiction over Melendez as he purposefully directed intentional tortious conduct and made defamatory statements toward Plaintiffs, deliberately causing injury in Alabama, in this judicial district. Specifically, Defendant has submitted to personal jurisdiction in this Court by:

a. filing nearly 30 fraudulent and bad faith Takedown Notices under the DMCA with the intent and effect of causing removal of Plaintiffs' Alabama-based and generated content; and

b. making numerous false and defamatory statements, with actual malice, about Plaintiffs, some of which he knows to reside in Alabama.

17. On July 29, 2023, during his public broadcast, Defendant directly communicated to Egar in Alabama a threat of litigation, violence and/or property seizure in Alabama: "**You got a nice house in Alabama. You want to keep it?**" (Exhibit 4 at 0:07).

18. On August 1, 2023, Defendant directed communications via his public broadcast to Egar in what Melendez calls "bum f*ck Alabama." He stated:

> the only person that cared that the Dues Payer[5] was leaving

[5] It is well-known that Defendant's derogatory names for Egar are "Sh*t Weigher" and "Dues Payer." (*See, e.g.*, Exhibit 5, at paras. 7 and 10.)

> the [*Howard*] *Stern Show*[6] was the Dues Payer's wife[7] because now she's stuck in a f*cking house in **bum f*ck Alabama** with that f*cking loser. LOSER!
>
> (Exhibit 4, at 0:29).

19. On March 13, 2024, Melendez communicated directly to Egar in Alabama, adding Defendant's opinions about people who live in Alabama:

> And by the way, **you're in Ala-F*cking-Bama**. **Who the f*ck desires to be *in* Alabama?** Jesus.
>
> (*Id.* at 1:18).

20. Defendant's unlawful actions are knowingly directed to Plaintiffs in Alabama are sufficient to confer personal jurisdiction over him. *See, e.g., Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063 (10th Cir. 2008) (Defendant's copyright infringement claims against Plaintiff created personal jurisdiction in Plaintiff's judicial district). Defendant's repeated fraudulent and bad faith DMCA Takedown Notices targeting Plaintiffs' content were made with actual knowledge that Egar and TSN are located in, and broadcast from, Alabama, and were intended to suppress Plaintiffs' Alabama-based speech and disrupt their expressive and commercial activities through the DMCA's automated enforcement process.

21. Defendant, when making the defamatory statements about Plaintiffs, knew or

---

[6] Plaintiff Egar was a longtime cast member of New York City-based Sirius XM Radio's *The Howard Stern Show*, before moving to Alabama to start *The Shuli Network*.

[7] Referring to Plaintiff Egar's wife.

should have known that such statements were directed at one or more of the Plaintiffs residing in Alabama. Defendant's statements have damaged TSN and Egar, Alabama residents.

22. Accordingly, Defendant has committed numerous intentional and wrongful acts aimed at one or more Plaintiffs residing in Alabama. By doing so, he created "minimum contacts" with the State of Alabama and is subject to the personal jurisdiction of this Court. *See, e.g., Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (Holding that, to exercise jurisdiction in harmony with due process, defendant must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice.") (internal quotation marks omitted); *Sawyer v. Cooper Tire*, 412 So. 3d 603, 610–11 (Ala. 2024) (Alabama's long arm statute extends to the fullest extent consistent with due process under the United States and Alabama Constitutions).

## Venue

23. Venue is proper in the Northern District of Alabama pursuant to either 28 U.S.C. § 1391(b) or 28 U.S.C. § 1400(a).

24. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred, and damages were caused in, the Northern District of Alabama.

25. In the alternative, venue is also proper under 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in the Northern District of Alabama.

26. Venue is separately proper pursuant to 28 U.S.C. § 1400(a), which provides that an action for copyright infringement "may be instituted in the district in which the defendant or his agent resides or **may be found**." (emphasis added).

27. For purposes of 28 U.S.C. § 1400, a defendant 'may be found' in any district in which he is subject to personal jurisdiction. *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004); *Roberts v. Keith*, No. 04CIV.10079(CSH), 2009 WL 637231, at *1 (S.D.N.Y. Mar. 11, 2009). Defendant may be found in the Northern District of Alabama because he is subject to personal jurisdiction in the District.

The DMCA

28. In 1998, Congress adopted the DMCA, in part to address copyright concerns with user-driven media, appearing on websites such as YouTube or other internet service providers ("ISPs").

29. § 512(c) sets forth a process by which an aggrieved owner of a copyrighted work can provide a Takedown Notice to an ISP that one of the ISP's users has exploited that work, via the ISP's website, without authorization. 17 U.S.C. § 512(c)(3).

30. A Takedown Notice must contain certain elements, including: (1) a signature; **(2) a statement that the complaining party believes that use of the material is**

**unauthorized; (3) a statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner,** its agent, or the law, and (4) a statement that the complaining party is authorized to act on behalf of the rights—holder, **under penalty of perjury.**

17 U.S.C. § 512(c)(3)(A) (emphasis added).

31. Upon information and belief, YouTube's takedown request form[8] requires Melendez to check each of the boxes below before submitting each and every one of the fraudulent and bad faith Takedown Notices:

**4. Legal agreements**

- ☐ I have a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
- ☐ The information in this notification is accurate, and under penalty of perjury, I am the owner, or an agent authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed.
- ☐ I understand that abuse of this tool, such as submitting removal requests for content I do not own, may result in termination of my YouTube account.

32. The very first statement above certifies that Defendant has a "good faith belief" that Plaintiffs' actions are not "authorized by … law." Despite checking this box, nearly 30 times now, Defendant has admitted that he knows Plaintiffs' use of his "material" is authorized by the Copyright Act.

33. Once the ISP receives a Takedown Notice, it can avoid liability for infringement, under what is commonly referred to as the DMCA's "safe harbor"

---

[8] This is an on-line "e-form" that is available through YouTube Studio. *See* https://support.google.com/youtube/answer/2807622?hl=en-GB

mechanism if it responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity. 17 U.S.C. § 512(c)(1)(C).

34. Upon removing or disabling access to the subscriber's content, the ISP must: (1) "take[ ] reasonable steps to promptly notify the subscriber that it has removed or disabled access to the [allegedly-infringing] material;" (2) furnish to the copyright owner any "counter notification" (i.e., a statement from the subscriber that its content is not actually infringing) it has received from the subscriber within ten days of receipt; and (3) "replace[ ] the removed material and cease[ ] disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice" **unless** the copyright owner informs the ISP that it has filed a lawsuit "to restrain the subscriber from engaging in infringing activity relating to the material on the [ISP's] system or network." 17 U.S.C. § 512(g) (emphasis added).

35. The DMCA also protects ISP users whose content is removed as the result of fraudulent and bad faith Takedown Notices. Pursuant to § 512(f), "[a]ny person who knowingly materially misrepresents ... that material or activity is infringing ... **shall** be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, [or] as the result of the service provider relying upon such misrepresentation in removing or disabling

access to the material or activity claimed to be infringing...” 17 U.S.C. § 512(f) (emphasis added).

36. The term “knowingly” under § 512(f) means that a party “actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations.” *Online Policy Grp. v. Diebold*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004); *see also Disney Enterprises, Inc. v. Hotfile Corp.*, 2013 WL6336286, at *48 (S.D. Fla. Sept. 20, 2013) (Intentional targeting of online files that defendant knew it had no right to remove precludes summary judgment in defendant’s favor).

Facts Common to All Counts

37. Plaintiffs’ use of Defendant’s YouTube broadcasts is protected by the fair use doctrine. At all times relevant hereto, Defendant had actual, subjective knowledge that Plaintiffs’ use was fair use, for purposes such as criticism, comment, news reporting, and parody.

38. Indeed, Defendant made **numerous** admissions before submitting the Takedown Notices that establish his subjective knowledge that fair use protected Plaintiffs’ use. (*See, generally* Exhibits 6 and 7, quoted herein).

39. On September 14, 2023, Melendez admitted that he learned (in 2023) that fair use means others can play his video clips without violating the law:

> they [another podcaster] did a whole show playing [Melendez's material]. And I didn't like I **never I didn't get the term fair use**, you know? I didn't understand it. **So, I don't think they were allowed to play it and all that. I was wrong**.
>
> (Exhibit 6 at 0:06-0:20).

40. On September 15, 2023, during a public broadcast, Melendez admitted that he was wrong when he thought others could not play clips of his show, and that he has come to understand that such use is fair use. He stated:

> I didn't know that you're allowed to do that. So, I Yeah. Was I wrong? Yeah. But I didn't know that you're allowed to do that thing. How do you know? No. And then my producer Royce was like, "No, John, I did a whole essay on **fair use and they are allowed to do it**." And we argued, but **he was right. I was wrong**.
>
> (*Id.* at 0:23-0:42).

41. On November 5, 2023, Melendez admitted during a public broadcast that his producer "schooled him" to understand that others "could…play clips of [my] show" because of "fair use":

> The only thing I did was I complained to Royce, my producer. How could he play clips of the show? This can't be allowed. **And Royce would school me. John, it's called fair use**.
>
> (*Id.* at 0:46-0:55).

42. On November 6, 2023, Melendez admitted during a public broadcast that

> The only thing I did was say to Royce, my producer, "Is this allowed? Is fair use? What is this fair use sh*t? How could they do that?" And I had the same problem with

> Revenge of the Cis [another podcaster] cuz **I didn't understand fair use.** I'm not a lawyer. I could have been, but I'm not. And Royce said, "**John, I wrote a thesis on fair use. Trust me, they're allowed to do it." And I go, "All right, fine."**
>
> (*Id.* at 0:58-1:25).

43. On December 9, 2023, Melendez admitted during a public broadcast that Melendez was "foolish enough to not understand fair use," but that when Producer Royce "finally got it through [Melendez's] thick skull", Melendez then (in 2023) understood that fair use allows other podcasters to play clips of Melendez's show.

> I was **foolish enough to not understand fair use**. I'm not a lawyer. And when it comes to legalese, I'm not, you know, no, **I didn't understand fair use**. Royce did. He tried to explain it to me and when he **finally got it through my thick skull, I understood.**
>
> (*Id.* at 1:27-1:46).

44. On January 9, 2024, Melendez admitted during a public broadcast that he learned from his producer that fair use allows content creators to play his show.

> So I f*cking asked Royce, "Is he **allowed to play our show?**" **Yeah**. **I didn't understand all the uh legal ramifications of fair use. I DIDN'T KNOW.**
>
> (*Id.* at 1:48-1:57).

45. On January 31, 2024, turning the tables, Melendez admits that he knows that fair use allows **him** to play **other creators' content**, including content that is "behind your paywall." He then dares whoever would strike him, to strike him, stating that he **knows his own show is protected by "fair use,"** which allows

Melendez to play others' content.

> So, it is going to be a fun day today. Yeah, you could strike it. It's your show. It's your show. You put it behind your paywall. **Fair use, buddy. Strike it all you want. Fair use. Fair use**.
>
> (*Id.* at 1:58-2:21).

46. On February 1, 2024, Melendez admitted during a public broadcast that he then understood that transformative works are protected speech and not subject to Takedown Notices.

> By the way, Doom [another content creator], I struck you. So, you know, if you're going to post my show, yeah, I would **suggest you make it transformative because I'll just keep striking you**.
>
> (*Id.* at 2:21-2:50).

47. Melendez knows Plaintiffs' content is transformative, fair use, and noninfringing – of that there is no doubt.

48. On June 29, 2024, during his public broadcast, Melendez admitted that he learned long before his Takedown Notices that other creators playing clips of Melendez's show for commentary was and is fair use.

> [*Melendez reads a comment from audience member "Peni5Wrinkle12" chatting with him in real time*]
>
> "P*nis Wrinkle [says] you [meaning Mr. Melendez] have history of misunderstanding all like fair use."
>
> [*Melendez then responds to Peni5Wrinkle12's comment*]

> **Fair use**, yes. **I got that wrong**. Royce[9] had to school me on it…
>
> So when we used a clip from *Airplane!*,[10] we had to pay. And it was my drop in. I used a clip from *Airplane!* And the studio charged us like 10 grand for it. **That's why I didn't understand fair use.**
>
> **So it becomes, I was wrong**, but rightfully so because we had used it correctly.
>
> Lady Kay[11] started taking shots at the Duke.[12] Now, I didn't know who he was. **And I didn't know fair use**. Now you might say, John, how dumb could you think that you don't know what fair use means? And I'll say **fair enough.**
>
> (*Id.* at 3:03-4:19).

49. Melendez has admitted during a public broadcast that he "was wrong" and that other podcasters are "allowed to play the clips" because of "fair use." He said:

> And he had done a whole thesis on it in college. And **he said, no, John, you are wrong. They're allowed to play the clips. And then he schooled me on it. And I was wrong**…And I was too stupid to realize I shouldn't respond. **I just didn't realize I didn't understand fair use. And Royce, who wrote an essay on it in college, had to school me on fair use**…

---

[9] Upon information and belief, Melendez's former producer.

[10] Presumably, Melendez is referring to *Airplane!*, a 1980 American disaster comedy film starring Robert Hays and Julie Hagerty.

[11] Upon information and belief, "Lady K" is Melendez's derogatory name for Karl Heberger, meant to insult him by implying that Mr. Heberger is feminine.

[12] Melendez refers to himself as the "Duke" which may be a John Wayne reference.

(*Id*. at 4:41-5:24)

50. Melendez admitted on his show that he knew that fair use permitted other creators to "play clips and excerpts" of "my podcast and goof on me." Defendant acknowledged:

> But right around this time, Just Do It,[13] a person I had never heard of, started to **play my podcast and goof on me** for no apparent reason. I had never heard of the guy, most like most Americans. And I didn't understand it. **And Royce and I would have fair use discussions. And Royce said, John, you're wrong**. **He's allowed to play clips and excerpts**. And I said, how? It's our property. Now, granted, I'm not a lawyer yet. And I'll never attest to being. **But I did not know. And Royce had corrected me**.
>
> (Exhibit 7 at 0:00-0:50).

51. When he submitted the Takedown Notices, Defendant had subjective, actual knowledge that Plaintiffs' use constituted noninfringing fair use within the meaning of the Copyright Act and was protected speech under the First Amendment.

52. Melendez actually knew that Plaintiffs' use was transformative and served purposes of criticism, commentary, parody, ridicule, satire, and analysis, adding new meaning, message, and expression distinct from the original works.

53. Melendez actually knew that Plaintiffs' use commented on and criticized the original works themselves, requiring the use of recognizable elements solely to "conjure up" the originals for purposes of critique and discussion.

---

[13] Defendant refers to Karl Heberger, of *Who Are These Podcasts*, as "Just Do It."

54. Melendez actually knew that Plaintiffs used only limited portions of the works, no more than necessary for criticism or commentary, and that the use was *de minimis* and did not appropriate protected expression as a whole.

55. Melendez actually knew that Plaintiffs' use was not substantially similar in protected expression to the copyrighted works and consisted in significant part of non-copyrightable elements, including ideas, facts, opinions, stock phrases, tropes, scènes à faire, and publicly known statements.

56. Melendez actually knew that Plaintiffs' use was not a market substitute for the original works, did not usurp demand, and could increase exposure to the original content.

57. Melendez actually knew that Plaintiffs reasonably, and in good faith, believed their use was protected fair use. YouTube has confirmed that Plaintiffs' beliefs were, and are, correct.

58. Defendant further knew that he could not establish ownership of the allegedly infringed material and failed to distinguish protectable expression from unprotectable material before invoking DMCA enforcement mechanisms.

59. Melendez actually knew that Plaintiffs enjoyed an implied license to view, reference, and comment on content Defendant voluntarily made publicly available, including on YouTube.

60. Despite this knowledge, Defendant knowingly and repeatedly submitted

Takedown Notices in bad faith, misusing the DMCA to suppress criticism and commentary rather than to protect legitimate copyright interests in violation of § 512(f).

*Defendant Abuses YouTube's Takedown Procedure*

61. Defendant knowingly submitted fraudulent and bad faith Takedown Notices to YouTube claiming that Plaintiffs' use of clips from Defendant's YouTube program infringed his copyright rights, despite his actual knowledge that the use was lawful fair use for purposes of criticism, commentary, parody, and mockery.

62. In each fraudulent and bad faith Takedown Notice, Defendant submitted a written notification sworn **under penalty of perjury,** identifying the allegedly infringed work and infringing work, and falsely stating a good-faith belief that Plaintiffs' use was not authorized, despite knowing the use was non-infringing fair use, in violation of 17 U.S.C. §§ 512(c)(3) and 512(f).

63. Upon information and belief, Defendant's Takedown Notices omitted any consideration or discussion of fair use or its statutory elements, further demonstrating Defendant's knowing failure to consider fair use before submitting the notices.

64. Defendant has submitted at least 27 fraudulent and bad faith Takedown Notices to YouTube. By way of example:

a. on November 18, 2025[14], Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Swing AND A Miss | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=V5f1p8tAcVo
> Content used: The Stuttering John Podcast. November 17th 2025.
> Content found during: 1:00:00 – 1:55:00
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification November 19, 2025
> Restored December 4, 2025

b. on November 22, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Stuttering John's FAKE Outrage |The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=Eb0vIjTxvQc
> Content used: The SJ Podcast. November 13th, 2025.

[14] Further illustrating Defendant's bad faith in the submission of this Takedown Notice, on November 15, 2025, Defendant showed numerous clips of Plaintiffs' show with added commentary – the very conduct he claims Plaintiffs engage in and infringe his copyright rights (Exhibit 8 at 2:45-3:40).

Content found during: 1:15:00 – 2:45:00
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification November 24, 2025
Restored December 9, 2025

c. on December 8, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: We WIN: Stuttering John QUITS The Internet...AGAIN | The Uncle Rico Show
Video url: https://www.youtube.com/watch?v=PTM6I3pZ-I4
Content used: The Stuttering John Podcast. November 7th, 2025.
Content found during: 0:50:32 – 1:34:00
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 9, 2025
Restored December 23, 2025

d. on December 10, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: They're Back! | The Uncle Rico Show w/ Anthony Cumia
Video url: https://www.youtube.com/watch?v=Do4

gNL94Ji4
Content used: The Stuttering John Podcast.
Content found during: 0:20:00 – 0:21:00
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 10, 2025
Restored December 24, 2025

e. on December 11, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: Uncle Rico Goes FULL Rico | The Uncle Rico Show
Video url: https://www.youtube.com/watch?v=LB6Favbm3cQ
Content used: The Stuttering John Podcast. December 10th, 2025.
Content found in: Entire video
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 13, 2025
Restored December 30, 2025

f. on December 19, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: Stuttering John Is CRASHING OUT | The Uncle Rico Show
Video

url: https://www.youtube.com/watch?v=G6f
_LYH6Chs
Content used: The Stuttering John Podcast.
December 17th, 2025.
Content found during: 1:16:54 – 2:45:00
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 20, 2025
Restored January 7, 2026

g. on December 21, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: Is Stuttering John LEAVING? |
The Uncle Rico Show
Video
url: https://www.youtube.com/watch?v=5Y-
m6KxnEQo
Content used: The Stuttering John Podcast.
December 4th, 2025.
Content found during: 1:06:03 – 1:46:34
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 22, 2025
Restored January 7, 2026

h. on December 28, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: The Fog Of Coors | The Uncle Rico Show
Video url: https://www.youtube.com/watch?v=3lrnDICzptk
Content used: The Stuttering John Podcast. December 23rd, 2025.
Content found during: 0:36:00 – 1:38:33
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 29, 2025
Restored January 13, 2026

i. on December 28, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

Video title: Stuttering John DIDN'T Go To NY For Xmas...Wha Happa? | The Uncle Rico Show
Video url: https://www.youtube.com/watch?v=n6tzS5PtKHM
Content used: The SJ Podcast. December 15th, 2025.
Content found during: 2:09:32 – 3:42:24
Removal request issued by: John Melendez
Contact info: misterkisster1119@gmail.com
Counter notification December 29, 2025
Restored January 13, 2026

j. on December 30, 2025, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an

infringement action and the content was restored:

> Video title: Stuttering John Has LOST | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=oTlYH89u1pk
> Content used: The Stuttering John Podcast. November 12th, 2025.
> Content found during: 0:52:09 – 2:38:22
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification December 30, 2025
> Restored January 14, 2026

k. on January 1, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: One Foot Out The Coors | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=43-H1JOmOVE
> Content used: The Stuttering John Podcast. December 26th, 2025.
> Content found during: 1:46:27 – 2:37:22
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 1, 2026
> Restored January 16, 2026

l. on January 12, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing;

Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Stuttering John STRIKES Cardiff! | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=-lB2xntz2kQ
> Content used: The SJ Podcast. January 5th, 2025.
> Content found during: 1:22:49 – 3:02:33
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 12, 2026

m. on January 12, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: One Brew Over the Cuckoo's Nest | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=PSb6r0MQi_E
> Content used: The Stuttering John Podcast. January 6th, 2025.
> Content found during: 2:09:11 – 2:58:13
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 12, 2026

n. on January 12, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing;

Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Holy Sheet! The Duke's House of Cards Crumbles | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=uEzTMU14TUQ
> Content used: SJ Podcast.
> Content found during: 1:08:48 – 1:48:16
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 12, 2026

o. on January 13, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: What Does The "L" Stand For? | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=UWhTtDSEZ1A
> Content used: The SJ Podcast. January 11th 2025.
> Content found during: 1:11:00 – 3:00:00
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 14, 2026

p. on January 13, 2026, defendant submitted the below DMCA Takedown Notice **twice during the same live broadcast**, directed at the Plaintiffs with subjective knowledge that it was a misrepresentation, and that Plaintiffs'

content was fair use. Plaintiffs submitted a counter-notification, and defendant has not followed up this Takedown Notice with a lawsuit thereof:

> Video title: What Does The "L" Stand For? | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=BYJ5TYLCHgE
> Content used: The Stuttering John Podcast. January 11th, 2025.
> Content found during: 0:47:34 – 1:50:57
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 14, 2026

q. on January 13, 2026, defendant submitted the below DMCA Takedown Notice directed at the Plaintiffs, causing the takedown of a live broadcast, with subjective knowledge that it was a misrepresentation, and that Plaintiffs' content was fair use. Plaintiffs submitted a counter-notification, and defendant has not followed up this, or any, Takedown Notice with a lawsuit thereof:

> Video title: Stuttering John Revises History | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=H3Abj6Bcbh0
> Content used: The Stuttering John Podcast. January 17th, 2026.
> Content found during: 0:55:37 – 1:34:34
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com
> Counter notification January 18, 2026
> (*taken down during livestream)

r. on January 13, 2026, defendant submitted the below DMCA

Takedown Notice directed at the Plaintiffs, causing the takedown of a live broadcast, with subjective knowledge that it was a misrepresentation, and that Plaintiffs' content was fair use. Plaintiffs submitted a counter-notification, and defendant has not followed up this, or any, Takedown Notice with a lawsuit thereof:

> Video title: Is That All You Got | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=HNsHa0_jwms
> Content used: What's Buggin' Me About Hollywood, November 19th, 2021-Chelsea Handler & The Movies
> Content found during: 1:10:00 – 1:20:00
> Removal request issued by: John Melendez
> Contact info: misterkissster1119@gmail.com

s. on February 17, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Stuttering John Goes To ATLANTIC CITY | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=pa9cU7sSTWo
> Content used: Part
> Content found in: Entire video
> Removal request issued by: John Melendez
> Contact info: misterkissster1119@gmail.com

t. on April 24, 2026, Defendant knowingly submitted the below

DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Stuttering John THREATENS A Delivery Guy | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=i9NUMV80iYs
> Content used: The SJ Podcast. April 23rd, 2026!
> Content found during: 0:55:00 – 1:45:00
> Removal request issued by: John Melendez
> Contact info: misterkisster1119@gmail.com

u. on April 26, 2026, Defendant knowingly submitted the below DMCA Takedown Notice misrepresenting Plaintiffs' fair-use content as infringing; Plaintiffs filed a counter-notification, Defendant failed to timely file an infringement action, and the content was restored:

> Video title: Stuttering John Is An ACTUAL Buffoon | The Uncle Rico Show
> Video url: https://www.youtube.com/watch?v=2zYwSJHH3Ds
> Content used: The SJ Podcast. April 24th, 2026!
> Content found during: 1:03:00 – 1:46:00
> Removal request issued by: Stuttering John
> Contact info: misterkisster1119@gmail.com

*YouTube Restores Plaintiffs' Content*

65. Plaintiffs timely and diligently submitted counter-notifications as allowed by

DMCA for **each and every one** of the above Takedown Notices.

66. YouTube, after reviewing the Takedown Notice and the removed content, has determined after **each and every one** of Defendant's Takedown Notices that Plaintiffs' content was noninfringing.

67. YouTube has **never** concluded that **any** of Plaintiffs' content was infringing.

68. All of Plaintiffs' content that was the subject of Melendez's bad faith and fraudulent Takedown Notices was restored at the expiration of the mandatory takedown period 10-14 day period required by the DMCA.

69. Once YouTube started restoring the Plaintiffs' noninfringing content, Melendez had further subjective knowledge that Plaintiffs' content was noninfringing fair use, and that his Takedown Notices were fraudulent, and made in bad faith.

70. As further proof that Melendez is misusing the DMCA, Melendez knows that under § 512(g)(2)(C), the ISP (YouTube) must replace the content unless the ISP receives notice from Defendant that he has filed an action seeking a court order to restrain the user's alleged infringement.

71. Melendez has **never filed a court action** for any of the above Takedown Notices. Melendez is just abusing the automatic 10-14 day removal over and over again to perpetually keep Plaintiffs off the air and cause irreparable harm and monetary damages to Plaintiffs.

72. "The fact that [Melendez] never actually brought suit against any alleged infringer **suggests strongly** that [Melendez] sought to use the DMCA's safe harbor provisions—which were designed to protect [ISPs], not copyright holders—as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property." *Alper Auto. v. Day To Day Imports*, No. 21-14236, 2022 WL 3418643, *2 (11th Cir. Aug. 17, 2022) (emphasis added) (*quoting Online Policy Group v. Diebold*, 337 F. Supp.2d 1195, 1204–05 (N.D. Cal. 2004)).

73. The 11th Circuit draws an "adverse inference from [a] Defendant's failure to initiate litigation against Plaintiff" after submitting Takedown Notices. (*Id.*).

*Defendant Admits Plaintiffs' Use is "Fair Use"*

74. On August 12, 2025, Melendez filed a First Amended Complaint ("NY FAC") in New York State Supreme Court, New York County in a case pending in that state. (Exhibit 9).

75. In the NY FAC, Melendez admits that the Plaintiffs' use of his content is transformative and for purposes including criticism, comment, news reporting, ridicule, mockery, and parody, meaning Defendant actually knew that Plaintiffs' content was fair use before he submitted Takedown Notices. (*See, e.g.,* Exhibit 9 at paras. 9, 13, 35, 43, 65, 66, 100, 119, 128, and 129).

76. The NY FAC alleges the "*fame* and *notoriety* of 'Stuttering John [Melendez]'" (*id*. at para. 117), which is newsworthy, and establishes that commentary about him

is fair use.

77. The NY FAC alleges and admits that defendants [in the NY action] are commentators, and that they comment on Plaintiff (a public figure of public interest) on their shows, establishing fair use and newsworthiness. (*Id.* at paras. 23, 36, 55).

*Defendant Refused to Cease-and-Desist From His Bad Faith Conduct*

78. On November 29, 2025, Plaintiffs informed Defendant via his counsel that his Takedown Notices were misrepresentations and violations of § 512(f), and requested that he cease the submission of future Takedown Notices. (*See,* Exhibit 3).

79. In the November 29, 2025 letter, Plaintiffs provided Defendant with some of the examples, video links, and clips above wherein Defendant admitted that he knew Plaintiffs' use was allowed. (*Id.* at pp. 4-6.)

80. Defendant received this letter, but did not respond or cease submitting bad faith and fraudulent Takedown Notices.

81. Melendez knows that copyright law and the DMCA must be construed narrowly to avoid suppressing protected speech, particularly criticism and commentary concerning public figures or creators, which Defendant claims to be.

82. Defendant's numerous Takedown Notices therefore all contained knowing and material misrepresentations that Plaintiffs' content was infringing, in violation of § 512(f).

*Defendant's Defamatory Statements*

83. Defendant, however, is not satisfied with a mere harassment campaign abusing the DMCA. He has made many false and defamatory statements about the Plaintiffs. Each of these statements was communicated to third parties via Defendant's YouTube channel. Defendant was negligent, reckless, and acted with actual malice in making these defamatory statements and has damaged and/or caused special harm to Plaintiffs.

84. On November 2, 2024, Defendant stated: "but of course you guys love to be stupid so you don't understand what's real and what's fake. This is just them [referring to Plaintiffs] trying to get out of the fact that they have the pedo[15] network.[16] That's the only thing. That's all they're doing."

85. On November 5, 2024, Defendant stated: "and I'm like did I text Bob Levy and I sure did I. Said how freeing is it to not only have to not be on the pedo network."

86. On November 17, 2025, during his show, his co-host said Shuli has been "watching child porn" and "this guy is a child molester" and "everybody knows it."

87. On August 28, 2025, Defendant stated, "Yeah. Yeah, … all you f*cking losers

---

[15]"Pedo" is shorthand for pedophile.

[16] Defendant, when using the phrase, the "pedo network" is referring The Shuli Network, TSN, Egar or Russo, or a combination thereof.

supporting the pedo network Jesus Christ you guys are pathetic all of you."

88. On October 31, 2025, Defendant stated: "My question is when will you idiots that super chat them realize you are supporting the pedo network? And yes it where I can call it the pedo network because it was named by a pedo and I can call it the pedo Network because your show was named by a pedo. So go get your f*cking lawyers."

89. Additionally, Defendant has referred to Russo as a "felon" many times, including on Defendant's show on September 1, 2023 and April 15, 2024. These statements, which are false, constitute defamation or defamation *per se*.

90. Each of the above statements is false.

91. Defendant made these defamatory statements with knowledge that they were false or with reckless disregard of whether they were false or not. Further, many of these statements refer, strongly suggest, or outright label Plaintiffs as pedophiles. These particular statements *per se* defamatory. *Miles v. Nat'l Enquirer, Inc.*, 38 F. Supp. 2d 1226 (D. Colo. 1999*); Hoch v. Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A.*, 742 So.2d 451 (Fla. Dist. Ct. App. 1999).

**Count 1 –Violation of the DMCA**

92. Plaintiffs incorporate all other allegations in this Complaint as if fully restated herein.

93. Defendant knew or should have known that his fraudulent and bad faith

Takedown Notices contained material falsehoods. His submissions were filed with the subjective (and actual) knowledge that Plaintiffs' content was fair use and therefore allowed. Thus, the Takedown Notices were submitted in bad faith.

94. "The purpose of § 512(f) is to prevent the abuse of Takedown Notices." *Lenz v. Universal Music*, 572 F.Supp.2d 1150, 1156 (N.D. Cal. 2008). "[T]he unnecessary removal of non-infringing material causes significant injury to the public where time-sensitive or controversial subjects are involved, and the counter-notification remedy does not sufficiently address these harms." *Id.*

95. The material posted on Plaintiffs' YouTube channel is protected by the fair use doctrine.

96. Defendant breached his duty to consider—in good faith and prior to sending a takedown notification—whether allegedly infringing material constitutes fair use, a use which the DMCA plainly contemplates as authorized by the law.

97. Because Defendant had subjective knowledge in advance that Plaintiffs' use was fair use, Defendant failed to meet his burden to consider fair use, and never considered fair use, prior to sending Takedown Notices. "[O]ne who knows that he has not considered fair use knows that he lacks a basis for that belief. That is sufficient actual knowledge of misrepresentation to meet the scienter requirement of § 512(f)." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1159 (9th Cir. 2016).

98. Defendant knowingly made materially false statements in his DMCA

Takedown Notices, including false sworn statements under penalty of perjury.

99. Defendant's knowledge and subjective bad faith are established by, *inter alia,* his failure to file any infringement action following repeated Takedown Notices, his continued submission of notices after YouTube restored the non-infringing content, the sheer volume of Takedown Notices, his defamatory statements about Plaintiffs, and his admissions that he knew Plaintiffs' use was fair use.

100. Defendant's material misrepresentations caused YouTube caused to repeatedly remove or disable access to Plaintiffs' non-infringing content, resulting in unwarranted takedowns that could not be adequately remedied through counter-notification given the time-sensitive and expressive nature of the content.

101. Defendant's knowing misrepresentations directly and proximately caused Plaintiffs' injuries and damages, including loss of access, suppression of speech, and resulting costs and attorneys' fees, pursuant to § 512(f).

**Count 2 – Declaratory Judgment of Non-Infringement**

102. Plaintiffs incorporate all other allegations in this Complaint as if fully restated herein at length.

103. Defendant has falsely contended, continues to contend, and has indicated he will continue to contend, that the Plaintiffs' content infringes his copyright interests.

104. Plaintiffs have not infringed any cognizable copyright interest in any of Defendant's works because Plaintiffs' use was fair use, transformative, parody,

commentary, protected speech, and the use was of noncopyrightable material.

105. Accordingly, there exists a justiciable controversy between Plaintiffs and Defendant.

106. Plaintiffs are entitled to a declaratory judgment that none of Plaintiffs' content infringes any of Defendant's copyright rights.

**Count 3 – Defamation, or in the alternative, Defamation *Per Se***

107. Plaintiffs incorporate all other allegations in this Complaint as if fully restated herein at length.

108. Defendant has made numerous false statements about the Plaintiffs individually and collectively.

109. These false statements were communicated to third parties by Defendant through his TouTube channel.

110. Defendant was at least negligent in making these false statements. Further, given Defendant's continuing harassment of Plaintiffs, Defendant acted with actual malice and knew that these statements were false or had a reckless disregard of the truthfulness of these defamatory statements.

111. Several of these false statements were defamatory *per se*.

112. These false statements by Defendant caused special harm to Plaintiffs' reputations, as well as other damages.

## Jury Demand

113. Plaintiffs demand a trial by jury as to all issues so triable.

## Prayer for Relief

114. Plaintiffs respectfully request that:

a. The Court enter judgment in favor of Plaintiffs and declare that Plaintiffs' content is fair use; and that none of Plaintiffs' uses of Defendant's video or content infringes any of Defendant's alleged intellectual property rights;

b. The Court enter a preliminary injunction requiring Defendant to expressly retract all of his previous DMCA Takedown Notices; and enjoining Defendant from submitting future DMCA Takedown Notices against the Plaintiffs;

c. The Court enter a permanent injunction requiring Defendant to expressly retract all of his previous DMCA Takedown Notices; and enjoining Defendant from submitting future DMCA Takedown Notices against the Plaintiffs;

d. The Court require Defendant to pay to Plaintiffs their reasonable costs and expenses, including attorneys' fees, incurred in the litigation of this action;

e. The Court award compensatory and punitive damages to Plaintiffs against Defendant in an amount to be proven at trial for Defendant's violation of the DMCA and defamatory statements, as set forth above; and

f. Such and other further relief as this Court deems appropriate and just.

Date: June 12, 2026

/s/*Jeremy A. Smith*
Jeremy A. Smith (ASB-1731-J73S)
L. Franklin Corely IV (ASB-7350-73C)
Attorneys for Plaintiffs

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: lfc@lanierford.com
jas@lanierford.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2026, the foregoing document was submitted for filing to the Clerk of the Court by using the Court's Case Management/Electronic Case Filing ("CM/ECF") System and served upon:

John Melendez
1716 NW 11th Ct
Cape Coral, FL 33993

via USPS, First Class Mail.

Date: June 12, 2026

/*s/Jeremy A. Smith*
Jeremy A. Smith (ASB-1731-J73S)
L. Franklin Corely IV (ASB-7350-73C)